UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN D. MORSE

        Plaintiff,

v.                              **REPORT AND RECOMMENDATION**
                                    **7:06-CV-1417 (LEK)**

COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## Introduction

1. Plaintiff Steven D. Morse brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his applications for benefits was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

2. For the reasons set forth below, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment on the pleadings be granted in part and Defendant's cross-motion for judgment on the pleadings be denied.[2]

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated January 14, 2009.
[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as

**Background**

3.  On September 30, 2003, Plaintiff, then a 47 year-old construction worker, filed an application for SSI and DIB, claiming disability since August 18, 2003, because of a heart attack, coronary artery disease ("CAD"), neck pain, right arm and hand numbness, arthritis and degenerative disc disease of the spine, emphysema, gastroesophageal reflux disease ("GERD"), high blood pressure, and high cholesterol (R. at 42-44, 52, 91, 226-28).[3] His application was denied initially on March 10, 2004 (R. at 35, 230). Plaintiff filed a timely request for a hearing on April 9, 2004 (R. at 41).

4.  On April 29, 2005, Plaintiff, his sister, and his attorney appeared before the ALJ (R. at 29-33, 250-73).The ALJ considered the case *de novo* and, on October 31, 2005, issued a decision finding Plaintiff was not disabled (R. at 13-27). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on September 22, 2006 (R. at 5-7). On November 23, 2006, Plaintiff filed this action.

**Discussion**

**I.  Legal Standard and Scope of Review**

5.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817

---

if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

[3] Citations to the underlying administrative record are designated as "R."

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

    6.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.  The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); <u>see</u> <u>also Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**II.  The ALJ's Decision**

8.  The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act. The ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 18, 2003 (R. at 16). At steps two and three, the ALJ found Plaintiff's CAD, hypertension, and degenerative disc disease of the cervical spine, were severe medically determinable impairments, but not severe enough to individually or in combination meet a Listed impairment (R. at 17-21). At step four, the ALJ concluded Plaintiff retained the residual functional capacity ("RFC") to perform the exertional requirements of light work, with the following limitations: a

4

sit/stand option every 20 minutes; no climbing ladders, ropes or scaffolds; only occasionally climbing stairs and ramps; and only occasionally stooping, kneeling, crouching or crawling (R. at 23-24). Considering the testimony of vocational expert ("VE") Mr. Rose, the ALJ found Plaintiff was unable to perform his past relevant work (R. at 25). Given Plaintiff's age, education, past work experience, and RFC, the ALJ concluded that Plaintiff could perform work as a non-clerical information clerk or as an order clerk (R. at 25-26).

### III. Discussion:

9. Based on the entire record, the Court recommends remand because the Appeal's Council failed to remand the decision for further consideration in light of additional evidence and failed to properly apply the treating physician rule, resulting in a decision not supported by substantial evidence.

### A. The Appeals Council

10. Plaintiff argues that the Appeals Council erred in failing to remand the ALJ's decision in light of the new evidence submitted to it. Plaintiff's Brief, pp. 10-11.

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b). "'Weight of the evidence' is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." HALLEX: Hearings, Appeals and

Litigation Manual I-3-3-4 (S.S.A. 2009), *available at* http://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-4.html. Even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence". Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five).

"Importantly, the treating physician rule applies to the Appeal's [sic] Council when the new evidence at issue reflects the findings and opinions of a treating physician." Shrack v. Astrue, No. 3:08-CV-00168, 2009 WL 712362, at *3 (D. Conn. Mar. 17, 2009) (citing Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)). The treating physician rule requires "the opinion of a claimant's treating physician as to the nature and severity of the impairment [be] given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, (2d Cir. 2008) (citing 20 C.F.R. §404.1527(d)(2)). The Second Circuit has said "the Appeals Council [has] an obligation to explain the weight it g[ives] to the opinions of [a treating physician]." Snell, 177 F.3d at 133; see 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

In this case, the additional evidence showed that by October of 2005 Plaintiff had

6

decreased exercise capacity and a stress test raised a suspicion of restenosis[4] (R. at 231-41). Plaintiff underwent another catheterization[5] which revealed 50% stenosis on the right coronary artery ("RCA") between his two stents, but no further intervention was required (R. at 231-37). The additional evidence also included the opinion of Plaintiff's treating physician, Dr. Calabrese (R. at 243-47).

The Appeals Council declined to review the ALJ's decision after considering Plaintiff's additional evidence, including the opinion of Plaintiff's treating physician, Dr. Calabrese (R. at 5-8). Without explaining why it declined to afford Dr. Calabrese's opinion controlling weight, the Appeals Council simply stated, "We found that this information does not provide a basis for changing the Administrative Law Judge's decision" (R. at 5-6). The Court finds two errors in the Appeals Council's decision.

First, the Court finds the Appeals Council's erred in failing to explain the weight it gave to Dr. Calabrese's opinions, which is a ground for remand. Snell, 177 F.3d at 133 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). The Commissioner argues that the ALJ satisfied the Commissioner's duty to explain the weight assigned to a treating physician's opinion when he reviewed Dr. Calabrese's treatment notes[6] and found them inconsistent with other substantial evidence. Defendant's Brief, pp. 18-19. The Court disagrees. Dr. Calabrese's opinions of Plaintiff's functional limitations were

---

[4] Restenosis is recurrent narrowing after surgical intervention. Dorland's Illustrated Medical Dictionary 1653 (31st ed. 2007) [hereinafter Dorland's].

[5] Cardiac catheterization is the insertion of a small catheter through a vein in the arm or leg and into the heart to determine intracardiac pressure, plan operative approaches, and evaluate appropriate therapy. Id. at 312.

[6] The Court notes that in his October 31, 2005 decision, the ALJ mistakenly identified Physician's Assistant ("PA") David Vigeant as a doctor (R. at 23-24). Because of this error the ALJ assessed "Dr. Vigeant's" treatment notes and assigned them "[no] significant weight" (R. at 24). While a PA's treatment notes alone would not be entitled to analysis under the treating physician rule, the treatment notes in question have all been signed by PA Vigeant and Plaintiff's treating physician, Dr. Calabrese (R. at 201-17).

first submitted to the Appeals Council and not available to the ALJ at the time he made his decision. "[W]hen the new evidence at issue [before the Appeals Council] reflects the findings and opinions of a treating physician," the Appeals Council is obliged under the regulations to apply the treating physician rule. <u>Shrack</u>, 2009 WL 712362, at *3. Thus, even if the ALJ properly weighed Dr. Calabrese's notes in the first instance, that does not relieve the Appeals Council of its "obligation to explain the weight it gave to the opinions of [Plaintiff's treating physician]." <u>Snell</u>, 177 F.3d at 133.

Second, the Court finds the Appeals Council did not comply with 20 C.F.R. § 404.970(b) when it declined to remand this decision to the ALJ. <u>See, e.g.</u>, <u>Woodford v. Apfel</u>, 93 F.Supp.2d 521, 528 (S.D.N.Y. 2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").The ALJ's conclusion that Plaintiff was not disabled was not supported by the weight of the evidence in light of the additional evidence before the Appeals Council, and is not now supported by substantial evidence. Dr. Calabrese's opinions refute the conclusion that Plaintiff is capable of performing light work. Dr. Calabrese found that Plaintiff had considerably greater limitations than those discerned by the ALJ in his RFC. <u>Compare</u> (R. at 23) <u>with</u> (R. at 243-47). Unlike the ALJ, Dr. Calabrese concluded that Plaintiff could only occasionally lift and carry ten pounds, frequently lift and carry less than ten pounds, stand or walk less than two hours a day, sit less than six hours a day, and had limited ability to push or pull with both upper and lower extremities (R. at 243-44). Also unlike the ALJ's findings, Dr. Calabrese found Plaintiff needed to limit his exposure to temperature extremes, noise, dust, humidity, hazards, and fumes, odors, chemicals or gases because they aggravated Plaintiff's shortness of

breath (R. at 246). Moreover, had the Appeals Council properly applied the treating physician rule, Dr. Calabrese's opinions would likely have been granted controlling weight. It appears to the Court that Dr. Calabrese's opinions are well-supported by "clinical and laboratory diagnostic techniques" such as, clinical evaluations, angiography,[7] stress tests, EKGs,[8] an EEG,[9] an MRI, a nerve conduction study, and a pulmonary function test, (R. at 180-220, 223-47),[10] and consistent with other substantial evidence in the record. Compare (R. at 245) (Dr. Calabrese opined Plaintiff had limitations in his ability to reach, handle and finger) with (R. at 221) (Plaintiff's nerve conduction study finding loss of muscle bulk and muscle strength in his hands). Furthermore, the ALJ's RFC relies almost exclusively upon the opinion of non-examining consultative examiner, Dr. Richard Blaber, that, for reasons discussed below, is unreliable and cannot constitute substantial evidence in this case.

In light of the totality of evidence in the record, the likelihood that Dr. Calabrese's opinion was entitled to controlling weight, and the questionable reliability of Dr. Blaber's opinion, the Court concludes that the weight of the evidence before the Appeals Council did not support the ALJ's findings. Therefore, the Appeals Council erred in failing to review this decision. The Court recommends remand so the Commissioner may

---

[7] Angiography is the "radiographic visualization of blood vessels following introduction of contrast material; used as a diagnostic aid in such conditions as . . . myocardial infarction," commonly known as a heart attack. Dorland's, supra note 4, at 85.

[8] An EKG or ECG is an electrocardiogram—"a graphic tracing of the variations in electrical potential caused by the excitation of the heart muscle and detected at the body surface." Id. at 606.

[9] An EEG is an electroencephalogram—a recording of the potentials on the skull generated by currents emanating spontaneously from nerve cells in the brain." Id. at 607.

[10] Although the Court cannot say that all the medical evidence of record supports Dr. Calabrese's opinion, see, e.g., (R. at 186-97), such unanimity is not required by the well-supported standard. See S.S.R. 96-2p, 1996 WL 374188, at *2. Moreover, if on remand the ALJ finds, despite the plethora of diagnostic techniques, that Dr. Calabrese's opinion is not based upon medically acceptable evidence, he must seek additional evidence or clarification from Dr. Calabrese. See 20 C.F.R. §§ 404.1512(e)(1); 416.912(e)(1).

properly apply the treating physician rule.

### B. Non-Examining Physician's Opinion

11.  Plaintiff also argues that the opinion of non-examining consultative physician, Dr. Richard Blaber, was insufficient to overcome Dr. Calabrese's opinion. Plaintiff's Brief, pp. 11-15.

In the instant case, the ALJ relied on Dr. Blaber's opinion to formulate Plaintiff's RFC—adopting it wholesale with the addition of a sit/stand option every twenty minutes (R. at 23, 173-79). However, Dr. Blaber's opinion does not constitute substantial evidence in this case, because his opinion pre-dates the diagnostic evidence. See Huhta v. Barnhart, 328 F.Supp.2d 377, 386 (W.D.N.Y. 2004) (finding error where the ALJ relied on a non-examining physician's opinion formulated prior to substantial deterioration of the claimant's condition and later medical evidence and opinions); Vasquez v. Sec'y of Health & Human Servs., 632 F. Supp. 1560, 1565 (S.D.N.Y. 1986) (noting that non-examining physician's opinions were not substantial contradictory evidence were they pre-dated treatment by the treating physician). For example, Dr. Blaber's opinion is dated March 3, 2004 (R. at 173), but after that date Plaintiff underwent: a pulmonary function test, which revealed mild pulmonary obstructive disease (R. at 186); an MRI on February 15, 2005, revealing bone spurs and some degenerative changes in his spine (R. at 218-19); a nerve conduction study on January 4, 2005, showing some abnormal responses, muscle bulk loss, and muscle strength loss (R. at 221-22); blood testing on January 14, 2005, which revealed borderline

normochromic normocytic anemia[11] (R. at 199-200); and several exercise stress tests, which by October 14, 2005 induced shortness of breath and chest pain after only six minutes, prompting Plaintiff's doctors to suspect restenosis and schedule another catheterization (R. at 194-95, 240-41). Dr. Blaber did not have the benefit of considering Plaintiff's subsequent deterioration or all the medical evidence. See, e.g., (R. at 173) (listing the evidence Dr. Blaber considered, ending with a stress test in November of 2003). On the other hand, Dr. Calabrese was able to consider this evidence because he managed Plaintiff's care. See also (R. at 243-47) (referencing impairments Dr. Calabrese's opinion considered, including chest pain, shortness of breath, knee osteoarthritis, and degenerative disc disease of the spine).

As the Court has already recommended remand for the Commissioner to properly apply the treating physician rule, the weight assigned to Dr. Blaber's opinion must necessarily be reassessed in light of the Commissioner's findings with respect to Dr. Calabrese's opinions. Therefore, the Court will not consider this issue further.

### C. Credibility, Severity, and RFC Analyses

12. As the Court has already determined that the treating physician's opinion was not properly assessed, the ALJ's analyses of Plaintiff's credibility, non-severe impairments, and RFC, and his questions to the VE, were necessarily flawed, because they relied on Dr. Blaber's opinion and not on Dr. Calabrese's.

#### 1. Credibility

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982

---

[11] Normochromic normocytic anemia is a reduction below normal concentrations of red blood cells in which the hemoglobin content and red blood cell size are still normal. Dorland's, supra note 4, at 79-80.

F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[12] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

In this case, the ALJ properly followed the two step credibility analysis and considered some of the listed factors in finding Plaintiff's alleged symptoms not fully credible (R. at 22). However, the ALJ relied, in part, on the absence of a treating physician's opinion supporting Plaintiff's alleged symptoms and limitations (R. at 22). In light of Dr. Calabrese's opinion and the additional medical evidence, all of which substantially support Plaintiff's allegations, the ALJ will have to reconsider his credibility

---

[12] The listed factors are: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

analysis on remand. See 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Additionally, the Court notes that the ALJ's analysis relied upon medical evidence of Plaintiff's heart condition, but ignored medical evidence of Plaintiff's other conditions, such as knee osteoarthritis, degenerative disc disease of the spine, and hand and arm numbness (R. at 199-200, 201-17, 218-19, 221-22). Upon remand, the ALJ should consider the medical evidence of all of Plaintiff's impairments. 20 C.F.R. §§ 404.1523, 416.923, 404.1529(a), 416.929(a) (directing the ALJ to consider all available evidence).

### 2. Severity

At step two, the ALJ must determine whether an individual has an impairment or combination of impairments that are severe. 20 C.F.R. § 404.1520. The Second Circuit has warned that the step two analysis may not do more than "screen out *de minimis* claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995). An impairment is not severe if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, "walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; . . . seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [using] judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; [and] [d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b); see also S.S.R. 85-28, 1985 WL 56856, at *3-4.

In this case, the ALJ concluded that Plaintiff's "GERD, emphysema, knee pain, right arm/hand numbness, and high c[h]olesterol" caused no more than mild limitations in Plaintiff's ability to perform basic work activities and were therefore not severe (R. at

13

17). It is not clear that the ALJ continued to consider these non-severe impairments throughout the disability decision. On one hand, he clearly considered Plaintiff's arm and hand numbness when he concluded Plaintiff had "no significant limitations related to handling, fingering and feeling" (R. at 21). However, at step three, the ALJ specifically excluded Plaintiff's non-severe impairments, assessing only Plaintiff's "severe impairments . . . singly or in combination" (R. at 21). Moreover, the remainder of the ALJ's decision gives no indication that he later considered Plaintiff's non-severe impairments in combination with the severe impairments. This was error. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (directing the ALJ to "consider all of [Plaintiff's] medical impairments . . . including . . . impairments that are not "severe"). On remand, the ALJ must consider the combination of Plaintiff's impairments.

### 3.  RFC and hypothetical questions

Plaintiff has also objected to the ALJ's analysis of his RFC and to the hypothetical questions posed to the VE. The ALJ's RFC was taken, almost wholesale, from the RFC completed by the disability analyst, based upon Dr. Blaber's opinion (R. at 173-79). As discussed above, Dr. Calabrese's opinion differs significantly from the ALJ's RFC. Therefore, on remand, the ALJ will have to reconsider Plaintiff's RFC in light of the weight granted to the treating physician's opinion and Plaintiff's combination of impairments.

### Conclusion

13.  Based on the foregoing, the Court recommends that Plaintiff's motion for judgment on the pleadings should be GRANTED in part and Defendant's motion for judgment on the pleadings should be DENIED.

Respectfully submitted,

*[signature]*

Victor E. Bianchini
United States Magistrate Judge

DATED: April 23, 2009

Syracuse, New York

## Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15 (2d Cir.1989); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

DATED:
April 23, 2009
Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge